JOHN M. McCOY III, Cal. Bar No. 166244
Email: mccoyj@sec.gov
GREGORY C. GLYNN, Cal Bar. No. 39999
Email: glynng@sec.gov
BERNARD B. SMYTH, Cal. Bar No. 217741
Email: smythb@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

INTERNATIONAL REALTY HOLDINGS, INC.; OTTONIEL MEDRANO; and LETICIA ISABEL MEDRANO,

Defendants.

Case No.: 09-cv-01945-DDP (PLAx)

**NOTICE OF MOTION AND MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY DEFENDANTS INTERNATIONAL REALTY HOLDINGS, INC., OTTONIEL MEDRANO AND LETICIA ISABEL MEDRANO SHOULD NOT BE HELD IN CONTEMPT OF TEMPORARY RESTRAING ORDER AND PRELIMINARY INJUNCTION; DECLARATION OF GREGORY C. GLYNN**

Date: August 23, 2010
Time: 10:00 a.m.
Place: Courtroom 3, U.S. Courthouse
312 N. Spring Street
Los Angeles, CA 90012

**To the Clerk of the Court and to All Parties and Their Counsel of Record:**

**PLEASE TAKE NOTICE** that the Plaintiff Securities and Exchange Commission ("Commission") will, and hereby does, move at 10:00 a.m. on August 23, 2010 before Hon. Dean Pregerson United States District Judge, located at Courtroom 9, United States Courthouse, 312 N. Spring Street, Los Angeles, CA 90012 for the issuance of an Order to Show Cause as to why the Defendants International Realty Holdings ("IRH"), Ottoniel Medrano ("O. Medrano") and Leticia Isabel ("L.I. Medrano") should not be found in civil contempt of the Court's March 23, 2009 Temporary Restraining Order ("TRO") and April 2, 2009 Preliminary Injunction.

This Motion for Order to Show Cause re Civil Contempt is based upon this Notice of Motion and Motion, the Declaration of Gregory C. Glynn including Exhibits, the separately filed Memorandum of Points and Authorities, and the [Proposed] Order to Show Cause, together with the files and records of this entire case and any evidence and/or argument which may be adduced at a Hearing held on this Order to Show Cause.

The instant Motion re Order to Show Cause is made following a conference pursuant to Local Rule 7-3 with Dmitry Y. Gurovich, Esq. of Gurovich, Berk and Associates, Counsel for Defendants held on June 23, 2010 regarding this Motion.

Notice is hereby given that civil contempt sanctions, which may include but are not limited to incarceration, may be imposed against each of the Defendants including the individual Defendants O. Medrano and L.I. Medrano.

DATED: July 22, 2010

Respectfully submitted,

Gregory C. Glynn
Bernard B. Smyth, III
Attorneys for Plaintiff
Securities and Exchange Commission

**DECLARATION OF GREGORY C. GLYNN
FILED IN SUPPORT OF MOTION BY PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION FOR ISSUANCE
OF ORDER TO SHOW CAUSE WHY DEFENDANTS
INTERNATIONAL REALTY HOLDINGS, INC., OTTONIEL MEDRANO
AND LETICIA ISABEL MEDRANO SHOULD NOT BE HELD
IN CIVIL CONTEMPT OF TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION.**

I, Gregory C. Glynn, declare:

1. I am an attorney at law admitted to practice before the California Supreme Court and all the Courts of the State of California as well as United States District Court for the Central District of California, the United States Court of Appeals for the Ninth Circuit and the United States Supreme Court. I am presently employed as a Senior Trial Counsel for the Los Angeles Regional Office of the U.S. Securities and Exchange Commission, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036, Telephone: (323) 965-3998 ("Commission").

2. I have personal and firsthand knowledge of the facts set forth in this Declaration, except as may be set forth on information and belief.

3. At or about the time of the filing of this case on March 23, 2009, I was assigned to assist in the trial and preparation for trial of the civil action entitled: *Securities and Exchange Commission v. International Realty Holdings, Inc., Ottoniel Medrano and Leticia Isabel Medrano*, Case No. 09-cv-01945-DDP (PLAx). This case was filed on March 23, 2009 as an Ex Parte Application for a Temporary Restraining Order ("TRO") and on that date the Court issued the TRO and related Orders including Orders (1) Freezing Assets, (2) Repatriating Assets, (3) Requiring Accountings and (4) Prohibiting the Destruction of Documents. The Court also issued an Order to Show Cause re Preliminary Injunction. ("OSC"). On April 2, 2009, the Court entered an Order of Preliminary Injunction and also continued Orders freezing assets, repatriating assets and prohibiting the destruction of documents.

4. On April 19, 2010, Defendant Ottoniel Medrano ("O. Medrano") consented to Entry of Judgment, Permanent Injunction and Other Relief. (Dkt No. 40)[1]. On April 20, 2010, and based on the Consent, this court entered Judgment, Permanent Injunction and Other Relief as to O. Medrano. (Dkt. No. 42). Also, on April 19, 2010, Defendant International Realty Holdings, Inc. ("IRH") consented to Entry of Judgment, Permanent Injunction and Other Relief. (Dkt No. 41). On April 20, 2010, and based on the Consent, this Court also entered Judgment, Permanent Injunction and Other Relief as to IRH. (Dkt. No. 43). On April 27, 2010, Defendant Leticia Isabel Medrano ("L.I. Medrano") consented to Entry of Judgment, Permanent Injunction and Other Relief. (Dkt No. 44). On April 29, 2010, and based on the Consent, this Court also entered Judgment, Permanent Injunction and Other Relief as to L.I. Medrano. (Dkt. No. 45). After entry of these three Judgments, the only remaining issues in the case were a determination on the proper amount of disgorgement as to each Defendant, the related prejudgment interest and the proper civil penalty, if any, as to each Defendant.

5. On May 27, 2010, the Plaintiff Commission filed a Motion for Summary Judgment as to all Defendants. This Motion is now scheduled to be heard by this Court on August 2, 2010. In the alternative, the Commission has moved for a determination of the proper amount of disgorgement as to each Defendant, the related prejudgment interest and the proper civil penalty, if any, as to each Defendant. To date of this Declaration, no opposition has been received from any of the Defendants to the Commissions' Summary Judgment Motion.

6. As set forth in the Summary Judgment Motion, the Defendants raised over $755,000 in investor funds and a total of $795,000 was wired to one or more law offices in Manila, Philippines. To date of this Declaration, no part of these funds has

---

[1]   References to "Dkt. No." are to the Docket of the District Court in this case. Case No. 09-cv-01945-DDP (PLAx).

been transferred to the jurisdiction of the United States Courts as ordered in the TRO and the Preliminary Injunction.

7. In both the TRO and the Preliminary Injunction, the following language is set forth regarding repatriation of investor funds sent out of the United States jurisdiction ("Repatriation Order").

> IT IS FURTHER ORDERED, that Defendants, and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, shall forthwith transfer to the registry of this Court all assets, funds, and other property held in foreign locations in the name of IRH, O. Medrano, and/or L. Medrano, or for the benefit or under the direct or indirect control of any of them, or over which any of them exercise control or signatory authority. (Preliminary Injunction at Section VIII at p. 7 (Dkt. No. 19), TRO at Section VII at p. 6 (Dkt. No. 10).

8. The Plaintiff Commission has in this case requested certain documents from the Securities and Exchange Commission of the Republic of the Philippines ("Philippines SEC") and has very recently received a response from the Philippines SEC. Certain documents received from the Philippines SEC are attached hereto as Exhibits.

9. Exhibit 1 is an Excel Spreadsheet or schedule of payees of the wires sent by O. Medrano of IRH to the Philippines. The payees shown on this Spreadsheet include Dino & Patag Law Offices, Rosacio Villareal & Dino C. Patag, and Gabriel L. Villareal, Esq. This Exhibit was previously marked as Exhibit 8 to the Declaration of Gregory C. Glynn submitted in support of the Commission's Motion for Summary Judgment against all Defendants herein: IRH, O. Medrano and L.I. Medrano. (Dkt. No. 47). The backup materials for this Excel Spreadsheet are contained in Exhibit 7 to the Glynn Declaration submitted in support of the Commission's Motion for Summary Judgment. The Court is requested to take

judicial notice of these documents previously filed in this litigation pursuant to F. R. Evid. 201.

10. Exhibit 2 consists of the Amended Articles of Partnership of the Law Firm of Villareal, Rosacia Dino & Patag Law Offices (dated April 16, 2009). This document, which was produced by the Philippines SEC, is a public record of the members of the Partnership. The Amended Articles of Partnership show that the members of the firm include the following: Gabriel L. Villareal, Crispulo C. Rosacia, Jr., Tarcisio A. Dino and Maximino V. Patag. These individuals are the recipients of the IRH wires described in Exhibit 1. This document also contains a name reservation form, dated April 13, 2005.

11. Exhibit 3 is a Retainer Agreement in letter form dated September 30, 2008 between Gabriel L. Villareal, as Managing Partner of Villareal, Rosacia Dino & Patag Law Offices and International Realty Holdings, signed on October 5, 2008 by Ottoniel Medrano on behalf of IRH. The Retainer Agreement provides that IRH is to pay the retainer fee of $500.00 a month to the Law Firm commencing October 1, 2008. Thus, IRH and O. Medrano became clients of Villareal, Rosacia Dino & Patag Law Offices in early October 2008.

12. Exhibit 4 consists of records produced to the Commission by the Philippines SEC reflecting that Ottoniel Medrano and L.I. Medrano entered the Philippines on September 9, 2008 and departed on September 14, 2008. These records were, in turn, produced to the Philippines SEC by the Bureau of Immigration of the Republic of the Philippines.

13. The foregoing records recently obtained by the Commission from the Philippines SEC show that the beneficial recipients of the funds wired to Villareal, Rosacia Dino & Patag Law Offices in the Philippines were IRH and O. Medrano, the parties who wired the funds to the Philippines in the first place.

14. Because almost all of the funds raised from investor investors were wired offshore to the Philippines and because none of the Defendants has taken any action

to have the funds returned as required by the Repatriation Order set forth in the TRO and Preliminary Injunction, the Commission now seeks an Order to Show Cause from this Court against each of the Defendants based on their utter failure to comply in any way with the Repatriation Order of the TRO and Preliminary Injunction.

9. The instant Motion re Order to Show Cause is made following a conference pursuant to Local Rule 7-3 with Dmitry Y. Gurovich, Esq. of Gurovich, Berk and Associates, Counsel for Defendants held on June 23, 2010 regarding this Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Los Angeles, California on July 22, 2010.

Gregory C. Glynn

# Declaration of Gregory C. Glynn

# Exhibit No. 1

Deposits to and Wires
Out of IRH 751-2 Account

| Date | Type | Debits | Credits | Payee/Payor | Notes | |
|---|---|---|---|---|---|---|
| 9/5/2008 | Deposit | | $100.00 | | Opening deposit | |
| 10/17/2008 | Deposit | | $5,000.00 | | | |
| 10/21/2008 | Deposit | | $10,000.00 | | | |
| 10/27/2008 | Deposit | | $15,000.00 | | | |
| 11/5/2008 | Deposit | | $10,000.00 | | | |
| 11/10/2008 | Deposit | | $1,000.00 | | | |
| 11/12/2008 | Deposit | | $10,000.00 | | | |
| 11/12/2008 | Deposit | | $25,000.00 | | | |
| 11/14/2008 | Deposit | | $2,000.00 | | | |
| 11/20/2008 | Deposit | | $1,000.00 | | | |
| 11/24/2008 | Deposit | | $1,000.00 | | | |
| 11/28/2008 | Wire Out | ($65,000.00) | | Dino & Patag law offices | | |
| 12/3/2008 | Deposit | | $50,000.00 | | | |
| 12/4/2008 | Deposit | | $10,000.00 | | | |
| 12/8/2008 | Deposit | | $5,000.00 | | | |
| 12/16/2008 | Deposit | | $5,500.00 | | | |
| 12/16/2008 | Deposit | | $15,000.00 | | | |
| 12/22/2008 | Deposit | | $10,000.00 | | | |
| 12/22/2008 | Deposit | | $11,000.00 | | | |
| 12/24/2008 | Deposit | | $9,000.00 | | | |
| 12/26/2008 | Deposit | | $2,000.00 | | | |
| 12/29/2008 | Deposit | | $100,000.00 | | | |
| 12/24/2008 | Wire In | | $643.40 | Richard Wayne Thorpe | | |
| 12/17/2008 | Wire Out | ($75,000.00) | | Rosacio Villareal Dino C. Patag | | |
| 12/22/2008 | Wire Out | ($75,000.00) | | Dino C. Patag law offices | | |
| 12/30/2008 | Wire Out | ($105,000.00) | | Dino & Patag law offices | | |
| 1/7/2009 | Deposit | | $1,000.00 | | | |
| 1/12/2009 | Deposit | | $4,000.00 | | | |
| 1/16/2009 | Deposit | | $17,000.00 | | | |
| 1/20/2009 | Deposit | | $72,000.00 | | | |
| 1/21/2009 | Deposit | | $105,000.00 | | | |
| 1/26/2009 | Deposit | | $1,000.00 | | | |
| 1/26/2009 | Deposit | | $5,000.00 | | | |
| 1/30/2009 | Deposit | | $15,000.00 | | | |
| 1/21/2009 | Wire Out | ($95,000.00) | | Dino & Patag law offices | | |
| 2/5/2009 | Deposit | | $75,000.00 | | | |
| 2/11/2009 | Deposit | | $5,000.00 | | | |
| 2/18/2009 | Deposit | | $10,000.00 | | | |
| 2/19/2009 | Deposit | | $10,000.00 | | | |
| 2/20/2009 | Deposit | | $64,000.00 | | | |
| 2/26/2009 | Deposit | | $10,000.00 | | | |
| 2/2/2009 | Wire Out | ($120,000.00) | | Gabriel L. Villareal, Esq. | | |
| 2/9/2009 | Wire Out | ($75,000.00) | | Gabriel L. Villareal, Esq. | | |
| 3/2/2009 | Deposit | | $1,000.00 | | | |
| 3/4/2009 | Deposit | | $10,000.00 | | | |

(8)

(1)

Deposits to and Wires

Out of IRH 751-2 Account

| Date | Type | Debits | Credits | Payee/Payor | Notes | |
|---|---|---|---|---|---|---|
| 3/9/2009 | Deposit | | $85,000.00 | | | |
| 3/16/2009 | Deposit | | $73,000.00 | | | |
| 3/10/2009 | Wire Out | ($185,000.00) | | Gabriel L. Villareal, Esq. | | |
| | | | | | | |
| | | ($795,000.00) | $861,243.40 | | | |

# Declaration of Gregory C. Glynn

# Exhibit No. 2



REPUBLIC OF THE PHILIPPINES
**SECURITIES AND EXCHANGE COMMISSION**
SEC Building, EDSA, Greenhills
City of Mandaluyong, Metro Manila

COMPANY REG. NO. 40164

*TO ALL MEN BY THESE PRESENTS:*

**THIS IS TO CERTIFY** *that the annexed*

**Amended Articles of Partnership of**

**VILLAREAL ROSACIA DIÑO & PATAG LAW OFFICES**
**(Formerly: Villareal Rosacia Diño Samson & Patag Law Offices)**

has been presented to the Commission at 4:08 o'clock in the afternoon of the 13th day of April, 2005, according to Entry No. 182617 of Volume XVII of the Day Book and duly recorded in Folio 2 Leaf No. 40164 Inscription No. (5) Volume No. 7788 of the Book of Partnership of the Securities and Exchange Commission.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the seal of this Commission to be affixed at Mandaluyong City, Metro Manila, Philippines, this 18th day of April, Two Thousand Five.

**BENITO A. CATARAN**
Director
Company Registration and Monitoring Department

MV/lea

Date: 16-4-2009 Time: 11:39:13 AM

www.sec.gov.ph

User Name: 04mcaalcoab

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 10

(2)

# COVER SHEET

4 0 1 6 4

S.E.C. Registration Number

VILLAREAL ROSACIA DINO AND PATAG LAW OFFICES

(Company's Full Name)

GROUND FLOOR ECJ BUILDING REAL CORNER ARZOBISPO STREETS INTRAMUROS, MANILA

(Business Address : No. Street City / Town / Province)

JESUS PERMEJO, JR.

Contact Person

525-8427

Company Telephone Number

1 2 3 1

Month Day

Fiscal Year

A A + P

FORM TYPE

Month Day

Annual Meeting

Secondary License Type, If Applicable

Dept. Requiring this Doc.

Amended Articles Number/Section

Total Amount of Borrowings

Total No. of Stockholders

Domestic

Foreign

To be accomplished by SEC Personnel concerned

File Number

LCU

Document I.D.

Date: 16-4-2009 Time: 11:39:14 AM

Cashier

www.secfgmrs.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Remarks = pls. use black ink for scanning purposes

Exhibit 2 Page 11

CENTRAL RECEIVING UNIT
Received by: ____
2005 APR 13 PM 4 16
SECURITIES AND EXCHANGE COMMISSION
REPUBLIC OF THE PHILIPPINES
1936

AMENDED ARTICLES OF GENERAL PARTNERSHIP
OF THE LAW FIRM
**VILLAREAL ROSACIA DIÑO & PATAG LAW OFFICES**
(Formerly Villareal Rosacia Diño Samson & Patag Law Offices)

KNOW ALL MEN BY THESE PRESENTS:

This Agreement made this 2nd day of February 2005 at the City of Manila, by and among:

GABRIEL L. VILLAREAL

CRISPULO C. ROSACIA, JR.

TARCISIO A. DIÑO

MAXIMINO V. PATAG

all of legal age, Filipino citizens, members in good standing of the Philippine Bar, and with postal address at the Ground Floor, ECJ Building, Real corner Arzobispo Streets, Intramuros, Manila;

WITNESSETH: That

WHEREAS, under and by virtue of the Articles of General Partnership dated September 27, 1984, ratified on the same date before Notary Public Jose B. Cruz of Manila and entered in his Notarial Register as Doc. No. 51; Page No. 12; Book No. IX; Series of 1984, Messrs. Cornelio T. Villareal, F. William L. Villareal and Gabriel L. Villareal formed a partnership for the

Date: 16-4-2009 Time: 11:39:15 AM
User Name: 04meaalconaba
www.sec.gov.ph

CONFIDENTIAL
Pursuant to Section 24(d)

general practice of law under the firm name known as "Villareal Villareal & Villareal", which Articles were registered with the Securities and Exchange Commission (the "SEC") on September 27, 1984;

WHEREAS, on November 27, 1990, Messrs. Cornelio T. Villareal, F. William L. Villareal, Gabriel L. Villareal, Virgilio S. Jacinto, Crispulo C. Rosacia, Jr., Tarcisio A. Diño and Ramon G. Samson caused to be filed with the SEC and Amended Articles of General Partnership of the Law Firm Villareal Jacinto Rosacia Diño and Samson Law Offices;

WHEREAS, on January 11, 1991, the SEC issued the Certificate of Filing of the Amended Articles of General partnership of Villareal Jacinto Rosacia Diño and Samson Law Offices (the "Articles");

WHEREAS, Mr. Cornelio T. Villareal died on December 8, 1992 and Messrs. F. William L. Villareal and Virgilio S. Jacinto have withdrawn from the partnership.

WHEREAS, under Section 12.3 of the Articles, the partnership shall not be dissolved by the disability, death, retirement or withdrawal of any of the partners from the partnership;

Date: 16-4-2009 Time: 11:39:16 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 13

SECURITIES AND EXCHANGE COMMISSION REPUBLIC OF THE PHILIPPINES

WHEREAS, Mr. Maximino V. Patag was admitted as new partner effective May 1, 1993 in accordance with the provisions of the said Articles.

WHEREAS, on August 5, 1993, Messrs. Gabriel L. Villareal, Crispulo C. Rosacia, Jr., Tarcisio A. Diño, Ramon G. Samson and Maximino V. Patag caused to be filed with the SEC and Amended Articles of General Partnership of the Law Firm Villareal Rosacia Diño Samson and Patag Law Offices;

WHEREAS, on March 8, 1994, the SEC issued the Certificate of Filing of the Amended Articles of General partnership of Villareal Rosacia Diño Samson and Patag Law Offices (the "Articles");

WHEREAS, Mr. Ramon G. Samson has withdrawn from the partnership.

WHEREAS, under Section 12.3 of the Articles, the partnership shall not be dissolved by the disability, death, retirement or withdrawal of any of the partners from the partnership;

NOW, THEREFORE, for and in consideration of the foregoing premises, the parties hereto have agreed, each with the other, to amend the Articles and bind themselves to the provisions of these Amended Articles of General Partnership (the "Amended Articles"), as follows:

Date: 16-4-2009 Time: 11:39:18 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 14

ARTICLE I

FIRM NAME

1.1. The firm name shall be: VILLAREAL ROSACIA DINO & PATAG LAW OFFICES.

1.2. The firm name may be changed at any time by the unanimous vote of the partners comprising the Executive Committee, in which event this Article shall be amended accordingly.

ARTICLE II

OFFICE

2.1. The principal office of the partnership shall be in Metro Manila.

2.2. Branch offices may be set up whenever and wherever the Executive Committee shall so decide.

ARTICLE III

TERM

The partnership shall exist indefinitely from the date mentioned in Article XIV until dissolved by agreement of the partners in accordance with Article XV hereof.

Date: 10-1-2009 Time: 11:20:19 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 15



ARTICLE IV

MANAGEMENT

4.1. The day-to-day affairs of the partnership shall be managed by a Managing Partner and, in his absence, by a Co-Managing Partner, to be elected every year by the partners from among the members of the Executive Committee.

4.2. The Managing Partner shall have and may reasonably exercise veto powers over decisions of the Executive Committee on all matters except in respect of those expressly relinquished to the Executive Committee under these Amended Articles, as well as those he may ~~be~~ deem fit to expressly relinquish from time to time after execution hereof; provided, however, that such powers relinquished to the Executive Committee may, upon reasonable request of the Managing Partner, be restored to him by a majority vote of the Executive Committee.

ARTICLE V

EXECUTIVE COMMITTEE

Date: 16-4-2009 Time: 11:39:20 AM

5.1. There shall be an Executive Committee composed of four (4) members who shall be elected by a majority vote or the partners at any meeting of such partners duly constituted. The members of the Executive

www.sec.gov.ph User Name: 04mealconab

CONFIDENTIAL
Pursuant to Section 24(d)

Committee shall initially be: Messrs. Gabriel L. Villareal, Crispulo C. Rosacia, Jr., Tarcisio A. Diño, and Maximino V. Patag. Other partners, who may hereafter be admitted pursuant to Article IX hereof, shall attend the meetings of the Executive Committee upon the request of a majority of the members thereof.

SECURITIES AND EXCHANGE COMMISSION REPUBLIC OF THE PHILIPPINES 1936

5.2. Subject to the provisions of Article IV hereof, the Executive Committee shall perform the functions set out in these Amended Articles as well as such other functions as may be delegated to it by the partners. The approval or written assent of the majority of the members of the Executive Committee shall be sufficient for all acts thereof unless the partners shall by majority vote, require more than a majority vote of the Executive Committee on any particular matter.

5.3. Any permanent vacancy in the Executive Committee due to death, permanent disability, retirement or withdrawal of any member thereof shall be filled by a majority vote of the remaining members of the Executive Committee. In case of any prolonged temporary vacancy by any member of the Executive Committee, a substitute member may be elected upon unanimous vote of the remaining members, provided that upon the return of the absent or temporarily incapacitated regular member, the substitute member shall automatically cease to be a member thereof.

Date: 16-4-2009 Time: 11:39:22 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

ARTICLE VI

CAPITAL CONTRIBUTION

SECURITIES AND EXCHANGE COMMISSION REPUBLIC OF THE PHILIPPINES 1936

6.1. The initial capital contribution, in cash, in Philippine Currency of the partners is set opposite their respective names below:

| Name | Contribution |
|---|---|
| CORNELIO T. VILLAREAL | P 10, 000.00 |
| F. WILLIAM L. VILLAREAL | 10, 000.00 |
| VIRGILIO S. JACINTO | 10, 000.00 |
| CRISPULO C. ROSACIA, JR. | 10, 000.00 |
| TARCISIO A. DINO | 10, 000.00 |
| RAMON G. SAMSON | 10, 000.00 |
| MAXIMINO V. PATAG | 10, 000.00 |
| TOTAL | P 80,000.00 |

6.2. It is agreed, however, that the respective profit participation of each partner shall not be based on the foregoing capital contributions but shall be determined in accordance with Article VII hereof. It is further agreed that, at the end of each fiscal year, the equity of each partner, as shown in the books of the partnership, as audited, shall be conclusive.

6.3. The library (including books identified as personal property of any partner), office equipment, leasehold improvements and rights, records, accounts receivable, cash, and all other existing assets of the partnership shall also form part of its capital.

Date: 16-4-2009 Time: 11:39:23 AM

CONFIDENTIAL Pursuant to Section 24(d)

User Name: 04meaalconab

Pursuant to Section 24(d)

www.sec.gov.ph

Exhibit 2 Page 18

6.4. The partners may be required to infuse additional capital contributions to the partnership under such terms as the Executive Committee may fix, subject to the veto power of the Managing Partner; provided, however, that in the event of an exercise of his veto power, the Managing Partner may, for such purpose, utilize partnership assets as collateral/s therefore.

6.5. The capital contributed by each partner shall not be withdrawn without the approval of all the other partners. Nothing herein contained, however, shall prevent reasonable withdrawals by partners if such withdrawals are, in fact, advances against their share of profits earned during the current fiscal year and provided that such withdrawals will not impair the working capital requirements of the partnership as determined by the Managing Partner.

ARTICLE VII

DISTRIBUTION OF PROFITS

7.1. The respective profit participation of each partner in the partnership shall be in such shares and periodic drawings as determined by the Executive Committee, subject, however, to the veto powers of the Managing Partner. Such participation need not be based on the capital contribution of the partners.

Date: 16-4-2009 Time: 11:39:25 AM
www.sec.gov.ph
User Name: 04meaalconab
CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 19

7.2. In determining the respective profit participation of each partner, client referrals, work load, and other services rendered by the partners for the relevant period, among others, shall be taken into consideration.

SECURITIES AND EXCHANGE COMMISSION REPUBLIC OF THE PHILIPPINES 1936

ARTICLE VIII

RESERVES

A certain percentage of the net profits of the partnership each year shall be retained and deposited in a trust fund to cover the retirement benefits of the partners, investments in business ventures and such other contingencies as may be determined by the Executive Committee.

ARTICLE IX

ADMISSION AND PROMOTION OF PARTNERS

9.1. Members of the Philippine Bar in good standing may be admitted to the partnership with the approval of all the partners.

9.2. Associate lawyers employed by the partnership may likewise be admitted to the partnership upon showing of consistent exemplary service to the partnership as determined by, and upon the approval, of the Executive Committee.

Date: 16-4-2009 Time: 11:39:26 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

ARTICLE X

DUTY OF PARTNERS

10.1. All partners shall participate in the conduct of the partnership affairs and each partner shall devote his entire time thereto. No partner shall, directly or indirectly, engage in any other business or occupation without the consent of the other partners. No partner shall, make, draw, accept or endorse any bill of exchange, promissory note or other engagement for the payment of money, or guarantee any debt or account on behalf of the partnership, or pledge the credit of the Firm in any way without the consent of the other partners and only in the course of the partnership business. No partner shall assign any part of his interest in the partnership or enter into any agreement as a result of which any other person shall become interested with him in the partnership.

ARTICLE XII

DEATH, DISABILITY, WITHDRAWAL AND RETIREMENT

12.1. If any of the partners shall be disabled from attending to the affairs of the partnership and such disability shall continue in excess of such number of months as may be determined by the Executive Committee, the partnership may, by a vote of all of the remaining partners, terminate the

Date: 16-4-2009 Time: 11:39:27 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 21

partnership with the disabled partner by written notice to the disabled partner sent via registered mail.

12.2. If the disability or death occurs after the disabled partner shall have rendered to the partnership fifteen (15) years of service (including years during which the partner served as an associate of the Firm), such partner shall receive benefits due to a retiring partner under Section 12.5 of these Amended Articles, the date of disability or death being considered as the date of retirement. On the other hand, in the event the disability or death occurs before the partner shall have rendered such number of years of service to the partnership, the provisions of Section 12.4 of these Amended Articles shall apply.

12.3. The partnership shall not be dissolved by the disability, death, retirement or withdrawal of any of the partners from the partnership.

12.4. In the event of such disability, death or withdrawal, the partnership shall be continued by the remaining partners who shall pay to the heirs of the disabled or deceased partner, as the case may be, within such reasonable period as the Executive Committee shall determine, an amount equivalent to 1/24 of his annual gross income for the preceding year multiplied by the number of years of service.

Date: 16-4-2009 Time: 11:39:29 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Payment of the aforementioned amount shall constitute full and final settlement of the disabled or deceased partner's interest in the partnership. Nothing herein contained, however, shall prevent the Executive Committee from giving to the heirs of the disabled or deceased partner, as the case may be, more than the amounts provided herein.

12.5. Any partner shall be entitled to retire from the partnership after having rendered fifteen (15) years of service to the partnership. Upon retirement, the retiring partner shall receive, within such reasonable period as the Executive Committee may determine, a retirement package consisting of a lump sum corresponding to 1/12 of his annual gross income for the preceding year multiplied by such number of years of service.

12.6. The partnership shall, upon the mutual agreement of the partners, have the option to pay in installments and/or in forms other than cash the interest of any partner who is disabled, dies or retires from the partnership.

12.7. The admission, disability, death, withdrawal or retirement of a partner shall require the filing of an amendment to these Amended Articles. A resolution on the matter of the remaining partners shall be recorded with the Securities and Exchange Commission or such other office as may be

Date: 16-4-2009 Time: 11:39:30 AM

www.sec.gov.ph User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

required by law, and thereupon be deemed an amendment to, and incorporated as part of, these Amended Articles.

SECURITIES AND EXCHANGE COMMISSION REPUBLIC OF THE PHILIPPINES 1936

ARTICLES XIII

PARTNERSHIP FUNDS

13.1. The partnership fund shall be deposited in the name of the firm in a bank or banks to be designated by the Executive Committee. The signature procedure for withdrawals of partnership fund shall be determine by the Executive Committee.

ARTICLE XIV

FISCAL YEAR

14.1. The fiscal year of the partnership shall commence on the first day of each year and shall close on the last day of the same year.

ARTICLE XV

VOLUNTARY DISSOLUTION

15.1. The partners by unanimous vote, may voluntarily agree to dissolve the partnership. In such event, the debts of the partnership shall first be paid as provided for, then, the partners, after determination by the Executive Committee, shall receive their respective proportionate participation in the undistributed net income for the current payment period. Thereafter

Date: 16-4-2009 Time: 11:39:31 AM

User Name: Umeaalconab

www.sec.gov.ph

CONFIDENTIAL
Pursuant to Section 24(d)

all the remaining assets of the partnership shall be divided among the partners in such proportion as may be reasonably determined by the Executive Committee as of the date of dissolution.

SECURITIES AND EXCHANGE COMMISSION REPUBLIC OF THE PHILIPPINES 1936

ARTICLE XVI

EFFECTIVITY

16.1. These Amended Articles shall be effective as of 02 February 2005.

IN WITNESS WHEREOF, the parties have hereunder signed these presents on the date and at the place first above written.

GABRIEL L. VILLAREAL

CRISPULO C. ROSACIA, JR.

TARCISIO A. DIÑO

MAXIMINO V. PATAG

SIGNED IN THE PRESENCE OF:

Date: 16-4-2009 Time: 11:39:32 AM

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

## ACKNOWLEDGMENT

REPUBLIC OF THE PHILIPPINES)
CITY OF MANILA QUEZON CITY, M.M. ) S. S.

APR 13 2005

BEFORE ME, a Notary Public, for and in the above locality, this ____ day of April 2005 at the City of Manila, personally appeared:

| NAME | COMMUNITY TAX CERT. NO. | DATE & PLACE OF ISSUE |
|---|---|---|
| GABRIEL L. VILLAREAL<br>TIN 106-914-324 | 04906486 | January 7, 2005<br>Mambusao, Capiz |
| CRISPULO C. ROSACIA, JR.<br>TIN 106-206-975 | 13996596 | February 9, 2005<br>Manila |
| TARCISIO A. DIÑO<br>TIN 106-914-148 | 13996595 | February 9, 2005<br>Manila |
| MAXIMINO V. PATAG<br>TIN 106-914-252 | 21520597 | February 14, 2005<br>Taytay, Rizal |

known to me and to me known to be the same persons who executed the foregoing Amended Articles of Partnership, and they acknowledge to me that the same are their free and voluntary act and deed.

IN TESTIMONY WHEREOF, hereunto affix my signature and Notarial Seal on the date and at the place first above-written.

Doc. No. 259;
Page No. 42;
Book No. 14;
Series of 2005.

vlvart-bylaws2/vlbart

JOEL G. CORDOLA
Notary Public
Until December 31, 2005
ROLL NO. 25103
PTR NO.6016425;1/03/05; Q.C.

Date: [illegible]-4-2009 Time: 11:39:34 AM

www.sec.gov.ph User Name: 04meaalconaba

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 26

Print Finish



Republic of the Philippines
SECURITIES AND EXCHANGE COMMISSION

# Reservation Payment Confirmation

This certifies that the name **VILLAREAL ROSACIA DIÑO & PATAG LAW OFFICES** has been reserved from **April 13, 2005 to May 13, 2005.**

Reference Reservation Number (RRN): **RRN20050413145503017**

Type of Industry: LEGAL ACTIVITIES

**Breakdown of Fees:**

Reservation Fee: Php 40.00

**TOTAL: Php 40.00**

**Important Reminders:**

NOTE: The fact that the name is available at the date verified, it is not to be regarded as an approval of the registration of the company or any application for change of name. No expense for printing of materials using a verified name should be incurred until registration takes effect. As this is a computer printout, any erasure or alteration on this document nullifies verification.

The applicant undertakes to change the reserved name in case another person or firm has acquired a prior right to the use of the said firm name or the same is deceptively or confusingly similar to one already registered.

Please do not pay for your Name Reservation and Extension WITHIN THE SAME DAY via Funds Transfer. You may course your payment at any selected UnionBank branches or at the SEC Teller.

Stamp Number: 320691



For SEC use only:
Override By: misoverride2
Reason: Other Override Remark(s) - to amend VILLAREAL ROSACIA DIÑO SANSON PATAG LAW OFFICES with SEC No. P000040164.

Date: 10-4-2009 Time: 11:39:37 AM

2004 SEC-iRegister
All rights Reserved
www.sec.gov.ph

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 27

Republic of the Philippines
SECURITIES AND EXCHANGE COMMISSION
SEC Bldg., EDSA, Greenhills, City of Mandaluyong

M. I. S. BASEMENT SEC MAIN BLDG.

Please fill up all space indicate N.A. if not applicable :

1 Date

## VERIFICATION / RESERVATION REQUEST

| 2 Please check appropriate box. | |
|---|---|
| [✓] Verification only - new transaction (with automatic reservation of 30 days) | [ ] Reissuance of certificate |
| [ ] Reservation: (60 days from verification date) | Original certificate lost: |
| [ ] Extension of reservation period: (90 days from verification date). | [ ] Within 30 day automatic reservation period |
| [ ] Others: ______ | [ ] With requested reservation period |
| | Date of previous verification: ____ |

3. Proposed Name (PRINT) :
*Pref. 1:* VILLAREAL ROSACIA DINO & PATAG LAW OFFICE
*Pref. 2:*
*Pref. 3:*

4 Former Name (if any) :
VILLAREAL ROSACIA DINO SAMSON & PATAG LAW OFFICE

5 Acronym in proposed name, if any, stands for:

6 Nature of Business : (See back for major industry classification)
LAW OFFICE

7 Principal Office Address :
M. M.

8 Business Office Address :
G/F ECJ CONDO. REAL COR. ANDA BASCO ST. INTRAMUROS MANILA

9 Subsidiaries/Parent Co./Affiliates (if any):

10 Printed Name : JEANS ROSINESO, JR. Signature [signature]

### PROCEDURE FOR NAME VERIFICATION AND RESERVATION

1. Secure and fill-up Verification/Reservation Request form as follows:

| Row No. | Definition |
|---|---|
| 1 | Write the date of the request for verification/reservation. |
| 2 | Indicate the purpose of the request by checking the appropriate box. The boxes are defined as follows : |
| | Verification only : First-time verification of proposed names (with automatic reservation period of 30 days). |
| | Re-issuance of cert. : Proposed name was already verified but the Verification Certificate was lost within the reservation period. A "re-issuance" of the certificate requested. |
| | Reservation of verified name : Reserving the proposed name for 60 days from verification date. |
| | Extension of reservation period : Modification of reservation period from 60 to 90 days from verification date. |
| | Others : Other transaction not stated above. |
| 3 | Indicate the proposed name to be verified. |
| 4 | Write down the former name of the applicant company, if any. |
| 5 | If the proposed name has an acronym, indicate what it stands for or its meaning. |
| 6 | Indicate the nature of business the applicant company wishes to engage in like trading, real estate, etc. (See back for major industry classification). |
| 7 | Write the principal office where major business transaction shall be located. |
| 8 | Write the business office address. |
| 9 | Indicate the corporation/company of which the applicant company is a subsidiary, parent company or affiliate of, if any. |
| 10 | Write the names in print of the person requesting for verification/reservation. |
| 11 | Write the signature of the person requesting for verification/reservation. |

Date: 10-4-2009 Time: 11:39:39 AM

2. Secure stamp from Cashier as follows:
   1 Stamps for automatic 30 days reservation.
   2 Stamps for 60 days reservation.
   3 Stamps for 90 days reservation.
3. Get service number.
4. Give filled up form to open Name Verification counter when service number is displayed.
5. Put stamps on certificate as instructed by Verifier. Leave counter.
6. Requests which have legal issues shall be directed in the Corporate Legal Department for final deposition.
7. Submit Verification Certificate together with registration documents.

www.sec.gov.ph

User Name: 04meaalconab

CONFIDENTIAL
Pursuant to Section 24(d)

Republic of the Philippines )
QUEZON CITY ) S. S.

AFFIDAVIT OF UNDERTAKING TO CHANGE NAME

I, CRISPULO O. ROSACIA, JR. of legal age, Filipino and resident of ________ after having been sworn to in accordance with law hereby depose and state:

I am the PARTNER of
(President/Incorporator/Partner)

VILLAREAL ROSACIA DINO & PATAG LAW OFFICE
(Name of Corporation/Partnership)

which is in the process of registration/amending corporate name with the Securities and Exchange Commission

That I, in behalf of said corporation/partnership, hereby undertake to change its corporate/partnership name in the event another person, firm or entity has acquired a prior right to the use of the said firm name by virtue of registration with other government agencies or our name is identical or deceptively or confusingly similar to that of any existing corporation or to any other name already protected by law or is patently deceptive, confusing or contrary to existing laws.

That this affidavit is executed to attest to the truth of the foregoing and for whatever legal purpose and intent it may serve.

In witness whereof, I hereby sign this affidavit this APR 13 2005 day of ________, 20____ QUEZON CITY.

Affiant

APR 13 2005

SUBSCRIBED AND SWORN to before me this ____ day of ______, 20____, affiant exhibiting to me his/her Community Tax Certificate No. 13991(?)596 issued on FEB. 9, 2005 at MANILA.

Date: 2009 Time: 11:39:41 AM

JOEL G. GORDOLA
Notary Public
Until December 31, 2005
ROLL NO. 25103
PTR NO.

User Name: 04meaalconab

www.dgov.ph

Doc. No. 208
Page No. 43
Book No. 17
Series of 2005

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit 2 Page 29

# Declaration of Gregory C. Glynn

# Exhibit No. 3

30 September 2008

SECURITIES AND EXCHANGE COMMISSION
ENFORCEMENT AND PROSECUTION DEPARTMENT
RECEIVED
Date 3/18/10 2:30
By: [signature]

International Realty Holdings
4015 Belleshire Way
Palmdale, Ca 93552

Attention: **Mr. Ottoniel Medrano**

Gentlemen:

We are pleased to submit for your consideration the following proposal for a legal retainer arrangement with our Firm under the terms and conditions set forth below.

1. **Retainer Fee**. Our Firm will serve as your retained counsel at a monthly retainer fee of US Dollars Five Hundred (US$500.00), exclusive of Expanded Value-added Tax on Professionals, payable within the first five (5) days of every month. The fee shall be subject to adjustment, by mutual agreement, as work experience develops.

2. **Date of Effectivity**. This agreement shall take effect as of October 1, 2008 subject to termination upon sixty (60) days prior written notice being given by one party to the other.

3. **Scope of Retainer Services**. As your retained counsel, our Firm will render the following services:

a. consultations, advice and opinions on all fields of law including, but not limited to, civil law, criminal law, remedial law, corporation law, general commercial law, banking law, tax law and labor law (except when rendering such advice and opinion will entail extended research and studies);

b. review and preparation of routine and ordinary agreements and other documents used in the ordinary course of your business, but excluding those requiring extensive negotiations or complex documentation; and

c. Representations before and routine verifications with the Securities and Exchange Commission, the Department of Labor and Employment, the Bureau of Domestic Trade, the Board of Investments, the Bureau of Internal Revenue, the Intellectual Property Office and other national and local government offices and agencies within Metro Manila.

CONFIDENTIAL
Pursuant to Section 24(d)

(3)

4. **Other Legal Services.** The following services are not covered by the monthly retainer fee and shall be subject to special billings:

a. Assistance and advice in special projects such as transactions or investments which require extensive negotiations and/or the preparation of complex legal documentation and preparation of written opinions on all fields of law which require extensive research and studies;

b. Litigation before judicial, administrative and quasi-judicial bodies;

c. Immigration matters;

d. Collective bargaining and other labor relations matters, including adversarial proceedings before the Department of Labor and Employment and related agencies.

In determining special billings for the aforementioned legal services, we use as basis our time involvement, plus a reasonable responsibility premium, taking into account such factors as the difficulty and importance of the work, the time constraints, and other relevant factors. However, we will at all times take into consideration the retainer relationship in billing you for services falling outside the scope of the regular retainer agreement. Thus, where services covered by the retainer agreement during a given period is not availed of, we will voluntarily reduce the amount which we would ordinarily bill for the services described above.

5. **Out-of-Pocket Expenses.** All out-of-pocket expenses (whether in connection with litigation or non-litigation matters) such as charges for telephone calls, telex, facsimile and cable charges, document reproduction charges, machine processing charges, hotel and transportation expenses incurred in court appearances or other work done for you by the Firm, filing fees in courts and administrative agencies, sheriff's fees, cost of stenographic notes, printing of briefs and the like, as well as other out-of-pocket expenses which you may authorize us to incur, shall be for your account. In cases where such out-of-pocket expenses are anticipated, we generally request that a deposit for such expenses be made. As a matter of policy, we periodically send you an accounting of the expenses as they are incurred, and a request for replenishment of the deposit, as may be deemed necessary.

6. **Conflicts of Interest.** In case any matter should arise between you and another client of the Firm, by virtue of which we might have a conflict of interest under the Canons of Professional Ethics which binds all lawyers, we reserve the right to inhibit ourselves from representing you and/or our other client insofar as that particular matter is concerned.

If the foregoing terms and conditions are acceptable, kindly signify your conformity by signing in the space provided below and return to us one signed copy of this Retainer Agreement.

CONFIDENTIAL
Pursuant to Section 24(d)

Very truly yours,

GABRIEL L. VILLAREAL
Managing Partner

CONFORME:

INTERNATIONAL REALTY HOLDINGS

By:

Ottoniel Medrano
Date: OCT 5, 2008

CONFIDENTIAL
Pursuant to Section 24(d)

# Declaration of Gregory C. Glynn

# Exhibit No. 4



REPUBLIC OF THE PHILIPPINES
DEPARTMENT OF JUSTICE
**BUREAU OF IMMIGRATION**
MAGALLANES DRIVE, INTRAMUROS
1002 MANILA

April 21, 2009

**HUBERT B. GUEVARA**
*Director*
Compliance and Enforcement Department
Securities and Exchange Commission
Sec Bldg., Edsa, Greenhills, Mandaluyong City

Dear Dir. Guevara:

This refers to your request for travel and derogatory records dated **16 April 2009.** Based on verification from our available database file, the following are the result(s) with reference number 2009-447-ISD:

| Lastname: | Firstname: | Results: |
|---|---|---|
| **1. MEDRANO** | **OTTONIEL** | **Travel Record Found & No Dero Record Found** |
| **2. MEDRANO** | **LETICIA** | **Travel Record Found & No Dero Record Found** |

**** nothing follows ****

Verified by: Diana Jean Concina
Source/s: BI - Main Computer Section
Date: April 20, 2009 / 03:47:23 pm
Coverage: Arrival & Departure from 1993 – Apr. 19, 2009

Please see attached document/s.

Very truly yours,

**FRANKLIN Z. LITTAUA**
*Executive Director*

ADM-CS-ASU \ dsc

CONFIDENTIAL
Pursuant to Section 24(d)

Exhibit Y Page 33 (4)

TRAVEL INFORMATION

ARRIVAL & DEPARTURE

| FULLNAME | BIRTHDATE | CTZ | PHIL ADDRESS | PASSPORT | A/D | TRVL DATE | FLTNO | IMM STAT | PORT | OFFICER |
|---|---|---|---|---|---|---|---|---|---|---|
| EDRANO, OTTONIEL | 08/02/1972 | USA | | 300249163 | ARR | 09/09/2008 | PR103 | E0408 | | BITUINCH |
| EDRANO, OTTONIEL | 08/02/1972 | USA | | 300249163 | DEP | 09/14/2008 | PR102 | | | FERNANDOJO |

ERIFIED BY : DIANA JEAN CONCINA
ATE & TIME VERIFIED : 04/20/2009 03:47:23 PM
AGE NO. : 1

********************************************************
FOR THE BUREAU OF IMMIGRATION INTERNAL VERIFICATION USE ONLY
NOT TO BE USED AS AN OFFICIAL DOCUMENT OUTSIDE OF THIS OFFICE
NOT VALID WITHOUT TRAVEL CERTIFICATION
********************************************************

Virginia [signature] 04/20/09 5:00pm
(-) Interception data

CONFIDENTIAL
Pursuant to Section 24(d)

TRAVEL INFORMATION

ARRIVAL & DEPARTURE

| FULLNAME | BIRTHDATE | CTZ | PHIL ADDRESS | PASSPORT | A/D | TRVL DATE | FLTNO | IMM STAT | PORT | OFFICER |
|---|---|---|---|---|---|---|---|---|---|---|
| MEDRANO, LETICIA ISABEL | 06/16/1975 | USA | | 442421140 | ARR | 09/09/2008 | PR103 | E0408 | | BITUINCM |
| MEDRANO, LETICIA ISABEL | 06/16/1975 | USA | | 442421140 | DEP | 09/14/2008 | PR102 | | | GUTIERREZW |

VERIFIED BY : DIANA JEAN CONCINA
DATE & TIME VERIFIED : 04/20/2009 03:53:05 PM
PAGE NO. : 1

************************************************************
FOR THE BUREAU OF IMMIGRATION INTERNAL VERIFICATION USE ONLY
NOT TO BE USED AS AN OFFICIAL DOCUMENT OUTSIDE OF THIS OFFICE
NOT VALID WITHOUT TRAVEL CERTIFICATION
************************************************************

Virginia Lunaria 04/20/09 5:10PM
(-) interception data

CONFIDENTIAL
Pursuant to Section 24(d)

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

[X] U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036. Telephone: (323) 965-3998 Fax: (323) 965-3908

On July 22, 2010, I caused to be served the document entitled: upon the parties to this action addressed as stated on the attached service list:

**NOTICE OF MOTION AND MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY DEFENDANTS INTERNATIONAL REALTY HOLDINGS, INC., OTTONIEL MEDRANO AND LETICIA ISABEL MEDRANO SHOULD NOT BE HELD IN CONTEMPT OF TEMPORARY RESTRAING ORDER AND PRELIMINARY INJUNCTION; DECLARATION OF GREGORY C. GLYNN**

[X] **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ] **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ] **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ] **HAND DELIVERY:** I caused to be personally delivered each such envelope by hand to the office of the addressee.

[ ] **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[ ] **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X] **E-FILING:** By causing the document to be electronically filed via the Court's CM/ ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ] **FAX (BY AGREEMENT ONLY):** By causing the document to be sent by facsimile transmission. The transmission was reported as complete and without error.

Date: July 22, 2010

Gregory C. Glynn

**SEC v. International Realty Holdings, Inc.**
**United States District Court**
**Central District of California--Western Division**
**Case No. CV-09-01945-DDP (JWJx)**
**(LA-3598)**

**MASTER SERVICE LIST**

Dmitry Y. Gurovich, Esq. (Also served by Facsimile)
Elon Berk, Esq.
Gurovich, Berk & Associates, APC
15250 Ventura Boulevard
Suite 1220
Sherman Oaks, California 91403

E-mail:gba-law@yahoo.com
Telephone: (818) 205-1555
Facsimile: (818) 205-1559

***Counsel for Defendants International Realty Holdings, Inc. Ottoniel Medrano and Leticia Isabel Medrano***