JOHN M. McCOY III, Cal. Bar No. 166244
Email: mccoyj@sec.gov
GREGORY C. GLYNN, Cal Bar. No. 39999
Email: glynng@sec.gov
BERNARD B. SMYTH, Cal. Bar No. 217741
Email: smythb@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL REALTY HOLDINGS, INC.; OTTONIEL MEDRANO; and LETICIA ISABEL MEDRANO,<br><br>Defendants. | Case No.: 09-cv-01945-DDP (PLAx)<br><br>**MEMORANDUM OF LAW FILED IN SUPPORT OF MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY DEFENDANTS INTERNATIONAL REALTY HOLDINGS, INC., OTTONIEL MEDRANO AND LETICIA ISABEL MEDRANO SHOULD NOT BE HELD IN CONTEMPT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Date: August 23, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 3, U.S. Courthouse<br>312 N. Spring Street<br>Los Angeles, CA 90012 |

## I. Introduction and Summary of Argument.

The Plaintiff Securities and Exchange Commission ("Commission") has filed a Motion for the issuance of an Order to Show Cause as to why the Defendants International Realty Holdings ("IRH"), Ottoniel Medrano ("O. Medrano") and Leticia Isabel ("L.I. Medrano") should not be found in contempt of the Court's March 23, 2009 Temporary Restraining Order ("TRO") and April 2, 2009 Preliminary Injunction.

This case was filed on March 23, 2009 as an Ex Parte Application for a Temporary Restraining Order ("TRO") and on that date the Court issued the TRO and related Orders including Orders (1) Freezing Assets, (2) Repatriating Assets, (3) Requiring Accountings and (4) Prohibiting the Destruction of Documents. The Court also issued an Order to Show Cause re Preliminary Injunction. ("OSC"). On April 2, 2009, the Court entered an Order of Preliminary Injunction and also continued the Orders freezing assets, repatriating assets and preventing the destruction of documents.

Recently discovered evidence provided by the Government of the Philippines in response to a request by the Plaintiff Commission discloses that the beneficial recipients of the over $795,000 in monies wired to members of a law firm in the Philippines are simply the Defendants IRH and O. Medrano. This information derives from a Retainer Agreement between the Law Firm which received the funds and IRH and O. Medrano. Thus these two defendants sent the investors' money out of the United States to themselves in the Philippines using a Law Firm's trust account to receive the funds.

The instant Motion for an Order to Show Cause arises from the failure of the Defendants, or any of them, to comply with a Repatriation Order issued by this Court both in the March 23, 2009 TRO and the April 2, 2009 Preliminary Injunction.

In both the TRO and the Preliminary Injunction, the following language is set forth regarding repatriation of investor funds sent out of the United States jurisdiction ("Repatriation Order").

> IT IS FURTHER ORDERED, that Defendants, and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, shall forthwith transfer to the registry of this Court all assets, funds, and other property held in foreign locations in the name of IRH, O. Medrano, and/or L. Medrano, or for the benefit or under the direct or indirect control of any of them, or over which any of them exercise control or signatory authority.

(Preliminary Injunction at Section VIII at p. 7 (Dkt. No. 19), TRO at Section VII at p. 6 (Dkt. No. 10).

The instant Motion for an Order to Show Cause arises from the failure of the Defendants to retrieve any of the funds wired offshore by themselves to themselves in the Philippines. These are investor funds and this Court has issued a Repatriation Order directing them to bring the funds back to the United States. This they have not done.

## II.  Factual Background

On September 5, 2008, O. Medrano opened a corporate account at Washington Mutual Bank (now JP Morgan Chase Bank, N.A. (JPMorgan)) IRH Account No. 940-211751-2 ("751-2 Account"). O. Medrano was listed as a signatory on the account and both O. Medrano and L.I. Medrano were listed as contact persons. Between the opening date of September 5, 2008 and the issuance of this Court's Freeze Order of March 23, 2010 over $755,000 in investor funds

went into this account and a total of $795,000 was wired to one or more law offices in Manila, Philippines. (Glynn Dec. ¶ 13, 14 and 16, Ex. 7, 8 and 10)[1]

In essence, the Defendants and each of them raised funds from investors and then stole these investor monies by wiring them offshore to one or more law firm trust accounts in the Philippines which they had set up prior to commencing their fraudulent scheme. Plaintiff Commission has in this case requested certain documents from the Securities and Exchange Commission of the Republic of the Philippines ("Philippines SEC") and has very recently received a response from the Philippines SEC.

This new evidence includes the Amended Articles of Partnership of the Law Firm of Villareal, Rosacia Dino & Patag Law Offices (dated April 16, 2009). This document, which was produced by the Philippines SEC, is a public record of the members of the Partnership. (Glynn Dec. at ¶ 10 and Ex. 2). The Amended Articles of Partnership show that the members of the firm include the following: Gabriel L. Villareal, Crispulo C. Rosacia, Jr., Tarcisio A. Dino and Maximino V. Patag.

Additional new evidence includes a Retainer Agreement in letter form dated September 30, 2008 between Gabriel L. Villareal, as Managing Partner of Villareal, Rosacia Dino & Patag Law Offices and International Realty Holdings, signed on October 5, 2008 by Ottoniel Medrano on behalf of IRH. The Retainer Agreement provides that IRH is to pay the retainer fee of $500.00 a month to the Law Firm commencing October 1, 2008. Thus, IRH and O. Medrano became clients of Villareal, Rosacia Dino & Patag Law Offices in early October 2008. (Glynn Dec. at ¶ 11 and Ex. 3).

---

[1] References are to the Declaration of Gregory C. Glynn submitted in support of the Commission's Motion for Summary Judgment Against all Defendants filed in this case. (Dkt. Nos. 46, 46-1 and 47). Case No. 09-cv-01945-DDP (PLAx).

Additional documents produced to the Commission by the Philippines SEC also show that Ottoniel Medrano and L.I. Medrano entered the Philippines on September 9, 2008 and departed on September 14, 2008. These records were, in turn, produced to the Philippines SEC by the Bureau of Immigration of the Republic of the Philippines. (Glynn Dec. at ¶ 12 and Ex. 4).

Thus, this new evidence provided by the Government of the Philippines shows that the client of the Law Firm which received the funds was none other than IRH and O. Medrano who sent the funds offshore. The evidence further discloses that the individual Defendants had visited the Philippines on September 9, 2008 within four days of establishing the IRH bank account on September 5, 2008.

## III. ARGUMENT

### A. The Defendants Have Violated And Continue To Violate This Court's Preliminary Injunction Regarding the Repatriation Order

In a civil contempt proceeding, the "'moving party has the burden of showing by clear and convincing evidence that the contemnor[s] violated a specific and definite order of the court.'" *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (*quoting Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)); *see also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ("If a person disobeys a specific and definite court order, he may properly be adjudged in contempt.") (*citing Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983)). The burden is then on the contemnor to demonstrate why he has been unable to comply with the Order. *See Affordable Media*, 179 F.3d at 1239 (*citing Stone*, 968 F.2d at 856 n.9). The Commission has shown, by clear and convincing evidence, that Defendants have violated a specific and discrete order of this Court, namely the Repatriation Order contained both in the TRO and the Preliminary Injunction.

### B. Civil Contempt Is The Proper Means Of Enforcing Compliance With This Court's Preliminary Injunction

The U.S. Supreme Court has addressed the nature of civil versus criminal contempt in a number of cases including *International Union, UMW v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552 (1994), *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444, 31 S. Ct 492 (1911) and *Hicks v. Feiock*, 485 U.S. 624, 108 S. Ct. 1423 (1988). In an early case, *Gompers, supra*, 221 U.S. at 441, the Supreme Court emphasized that whether a contempt is civil or criminal turns on the "character and purpose" of the sanction involved. Thus, a contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers, supra*, 221 U.S. at 441. In order for a fine to be civil, the contemnor must be afforded an opportunity to purge. *Bagwell, supra,* 512 U.S. at 829, citing *Penfield Co. of California. v. SEC,* 330 U.S. 585, 590, 67 S.Ct. 918 (1947).

This Court has inherent power to enforce compliance with its lawful orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). *See also* 18 U.S.C. § 401 (1982); *Young v. United States*, 481 U.S. 787, 793 (1987); *In re Crystal Palace*, 817 F.2d at 1364; *see also* Fed. R. Civ. P. 70. Further, courts have found defendants in civil contempt under circumstances similar to those presented in this case. Courts have, for example, held a defendant in a Commission action in civil contempt for failure to account for funds and produce records. *See, e.g., SEC v. Elmas Trading Corp.*, 824 F.2d 733, 732-33 (9th Cir. 1987); *SEC v. Penfield*, 157 F.2d 65, 66-67 (9th Cir. 1946), *aff'd.* 330 U.S. 585 (1947); *see also CFTC v. Emerald Worldwide Holdings*, 2005 WL 77048, at *1 (C.D. Cal. January 3, 2005) (escalating daily fine converting to imprisonment when defendant failed to provide an accounting or deliver books and records).

6

Courts also have held a defendant in a Commission enforcement action in civil contempt for violating an order freezing funds and assets. *See, e.g., SEC v. Moss, 644 F.2d 313, 315-16* (4th Cir. 1981), cert. denied, 455 U.S. 1023 (1982) (upholding determination by district court that defendant was in contempt of freeze order when he sold a condominium apartment and some shares of bank stock without the court's approval). Likewise, courts have held defendants in civil contempt for continuing to deceive investors after the entry of an injunctive order. *See, e.g., CFTC v. Skorupskas,* 605 F. Supp. 923, 945 (E.D. Mich. 1985). Thus, this Court has the inherent authority to hold the Defendants in this case in civil contempt for failure to comply with this Court's Repatriation Order.

### C. This Court Should Impose A Sanction Sufficiently Coercive To Compel Defendants' Compliance with the Repatriation Order

The Court has broad equitable power to order appropriate relief in civil contempt proceedings. *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). Civil contempt is "wholly remedial" and is intended to coerce compliance with an order of the Court. *Southern Railway Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968). See also *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

When the defendant in *Elmas Trading Corporation* refused to account for funds or produce records relating to assets, for example, the district court ordered him incarcerated. *See Elmas Trading Corp.*, 824 F.2d at 733. As the Court of Appeals for the Ninth Circuit has held:

> "Imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or in substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the

> affirmative act required by the court's order. . . . If imprisoned . . . 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do."

*SEC v. Penfield, supra*, 157 F.2d at 66 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911) (internal citations omitted). Imposition of a daily fine may well be inappropriate. *See Int'l Bus. Machs. Corp. v. United States*, 493 F.2d 112, 116 (2d Cir. 1973) (fine may be imposed to coerce compliance). *See CFTC v. Skorupskas,* 605 F. Supp. at 945 (ordering incarceration if defendant failed to disclose location of offshore funds and funds raised from investors after entry of injunction). Incarceration would be more likely to coerce Defendant O. Medrano's compliance with the Repatriation Order and is within the Court's discretion if the Court finds that incarceration would serve that proper purpose of civil contempt. *See Shillitani*, 384 U.S. at 370-71; *SEC v. Penfield, supra*, 157 F.2d at 66.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the Commission's Motion and issue an Order to Show Cause why Defendants IRH, O. Medrano and L.I. Medrano should not be held in civil contempt and subjected by this Court to appropriate sanctions.

DATED: July 22, 2010

Respectfully submitted,

/s/ Gregory C. Glynn
Gregory C. Glynn
Bernard B. Smyth, III
Attorneys for Plaintiff
Securities and Exchange Commission

## PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

[X] U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036. Telephone: (323) 965-3998 Fax: (323) 965-3908

On July 22, 2010, I caused to be served the document entitled: upon the parties to this action addressed as stated on the attached service list:
**MEMORANDUM OF LAW FILED IN SUPPORT OF MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY DEFENDANTS INTERNATIONAL REALTY HOLDINGS, INC., OTTONIEL MEDRANO AND LETICIA ISABEL MEDRANO SHOULD NOT BE HELD IN CONTEMPT OF TEMPORARY RESTRAING ORDER AND PRELIMINARY INJUNCTION**

[X] **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ] **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ] **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ] **HAND DELIVERY:** I caused to be personally delivered each such envelope by hand to the office of the addressee.

[ ] **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[ ] **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X] **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ] **FAX (BY AGREEMENT ONLY):** By causing the document to be sent by facsimile transmission. The transmission was reported as complete and without error.

Date: July 22, 2010

Gregory C. Glynn

<u>SEC v. International Realty Holdings, Inc.</u>
United States District Court
Central District of California--Western Division
Case No. CV-09-01945-DDP (JWJx)
(LA-3598)

## MASTER SERVICE LIST

Dmitry Y. Gurovich, Esq.           (Also served by Facsimile)
Elon Berk, Esq.
Gurovich, Berk & Associates, APC
15250 Ventura Boulevard
Suite 1220
Sherman Oaks, California 91403

E-mail: gba-law@yahoo.com
Telephone: (818) 205-1555
Facsimile:  (818) 205-1559

*Counsel for Defendants International Realty Holdings, Inc. Ottoniel Medrano and Leticia Isabel Medrano*